State on the Relation of J. H. QUINN v. T. D. LATTIMORE.

*Quo Warranto—Elections—Rights of Voters—Registration—Voting in Wrong Township—Throwing Out Votes—Impeachment of Returns.*

1. Where a registrar of election registers a person entitled, under the Constitution and laws to vote, but through inadvertence or fraud fails to administer the oath required to be administered, such person shall not be for that reason deprived of his vote.

2. Where a person entitled, under the Constitution and laws, to be registered as a voter, was registered by one with whom the registrar left the books and such registration was accepted as sufficient by the registrar and acted on by the judges of .election, the vote of such person will not be rejected for such irregularity.

3. Where qualified voters living near the dividing line of two townships, which line was not definitely located, in good faith registered and voted in the township in which they did not actually reside, but it appeared that they had listed their property for taxation, sent their children to school, and, for many years previous, had registered and voted in the same township ; *Held,* that the votes of such electors, having been cast, must be counted. (Harris v. Scarborough, 110 N. C. 232, *overruled.*)

4. Where the judges of an election received the ballot of a person entitled, under the Constitution and laws, to vote, who had, in proper time, presented himself for registration and taken the required oath, but whose name, through the inadvertence or fault of the registrar, had not been entered on the registration books ; *Held,* that the vote of such person must be counted.

5. Where a person otherwise legally qualified, who had not been allowed to register because at that time he had not been a resident of the State for one year, but who became qualified in that respect on or before the day of election, asked to be allowed to register on election day and tendered his ballot, which was refused ; *Held,* that such vote should have been received and should be counted for the candidate for whom he proposed to vote.

6. The declaration of the result of an election by the judges of election, after a count of the ballots by them, is *prima facie* evidence of the correctness of the count until rebutted by proper and competent evidence.

7. Where, at the close of an election in a township, the judges counted
   the ballots and officially declared the result, the correctness of such
   count and declaration is not rebutted by the introduction, in evi-
   dence, of a tally sheet showing a different result which was kept
   overnight and during the day following the election in a public
   office, where any one could have access to it and which bears signs
   of having been tampered with.

ACTION of *quo warranto* by the State, on the relation of
J. H. Quinn against T. D. Lattimore, to try the title to the
office of Clerk of the Superior Court of CLEVELAND county,
heard, on exceptions by both parties, to the report of the
referee, before *Bryan, J.*, at Spring Term, 1896, of CLEVE-
LAND Superior Court.   His Honor gave judgment for the
defendant and both parties appealed.

*Messrs. D. W. Robinson, M. H. Justice, R. Z. Linney*
and *J. C. Pritchard*, for plaintiff (appellant).

*Messrs. Jones & Tillett, W. J. Montgomery* and *Webb,
Frick & Ryburn*, for defendant.

FURCHES, J.: This is an action of *quo warranto* brought
for the purpose of trying the title to the office of Clerk of
the Superior Court of Cleveland county, resulting from the
election of 1894.   The case was referred by consent to
Armstead Burwell, who filed his report to Spring Term,
1896, to which the defendant filed fifty-seven exceptions,
and the plaintiff, by way of asignment of error, filed thirty-
seven.   The case presented to this court on appeal, includ-
ing the report of referee, the Judge's findings, exceptions
and briefs, contains 368 pages of printed matter.

According to the referee's findings and report the plain-
tiff was elected by nine majority, and according to the find-
ings and judgment of the court the defendant was elected
by thirty majority.

The principal grounds of contention between the parties
may be classified and reduced to four: 1. As to persons

who registered and voted in other townships than those in which they resided.   2. As to those who were irregularly registered—some not being sworn when they were registered, and others not being registered by the registrar, but by other persons who had the registration books in their possession and acted for the registrar in making these registrations.   3. An alteration of five votes in township No. 6, after the votes had been counted and announced on the night of election.   4. The alteration in township No. 8 of six votes after it had been counted, declared and certified by the judges of election on the night of the election. The consideration of these four questions, and a few others that do not fall strictly within the principle involved in either of them, will decide the main issue and determine whether the plaintiff or the defendant was elected to this office.

This is a government of the people, by the people and for the people, founded upon the will of the people, and in which the will of the people legally expressed must control.   Const. Art. I, Sec. 2.

Every male person born in the United States, or naturalized, 21 years of age, and who shall have resided in the State 12 months next preceding the election, and ninety days in the county in which he offers to vote, shall be deemed an elector.   Const., Art. VI, Sec. 1.   It shall be the duty of the General Assembly to provide from time to time for the registration of all electors, and no person shall be allowed to vote without registration, or to register without first taking an oath to support the Constitution. Const., Art. VI, Sec. 2.

In construing these provisions of the Constitution we should keep in mind that this is a government of the people, in which the will of the people—the majority—legally expressed, must govern and that these provisions and all

Acts providing for elections should be liberally construed, that tend to promote a fair election or expression of this popular will.    The second section of Article VI was adopted for this purpose, and we are to *presume* that all election laws, enacted since, have been passed with the same end in view.    This section of the Constitution provides that the "General Assembly" shall pass registration laws, and that no one shall be entitled to register without taking an oath, and that no one shall vote who is not registered.    This provision of the Constitution, that no one shall be entitled to register without taking an oath to support the Constitution of the State and of the United States, is directed to the registrars.    It must be to them and to them alone, as is said by this court in *Southerland* v. *Goldsboro*, 96 N. C., 49.    But if the registrar, through inadvertence, registers a qualified voter, who is entitled to register and vote, without administering the prescribed oath to him, shall he, for this negligence of the officer, be deprived of his right to vote, and thereby the will of the majority defeated?  And, if this omission was not through inadvertence but with a view to entrap the voter and thus defraud him out of his vote, it is much more the reason why he should not be, and that such methods should not be allowed to prevail.    We do not hold that, where a registrar proposed to administer the oath, and the party wishing to be registered refuses to take the oath, it is the duty of the registrar to register him.    We would say that under such circumstances he should not be registered.    These are matter for the registrar, as has been said in Southerland's case, *supra*.    But it seems that all the parties who registered without being sworn, and voted without being objected to, had been registered before, and the presumption is they had been sworn at that time; and if they had been, how many times must they be sworn?

Article VI, Section 1, prescribes the qualifications of an elector, and Section 2 of this Article is a disabling clause (*Railroad* v. *Commissioners*, 72 N. C., 486; *Norment* v. *Charlotte*, 85 N. C., 387) placed in the hands of the registrar. And a qualified elector can not be deprived of his right to vote, and the theory of our government that the majority shall govern, be destroyed by either the wilful or negligent acts of the registrar, a sworn officer of the law. This would be self-destruction, governmental suicide.

We, therefore, hold that where an elector's name appeared on the registration books he had a right to vote, whether he was sworn or not, unless he was challenged, and this was not made a ground of challenge. It was a matter for the registrar and not for the Judges—though in this case it does not appear that any of these voters were challenged. These rules are intended for the guidance and government of registrars, which they should observe in the discharge of their duties as registrars, so as to *promote* the object to be attained—the free, full and fair expression of the will of the qualified voters, as prescribed in Section 1, Article VI of the Constitution.

It appears that a number of persons were registered by other persons than the regularly appointed registrars; in one instance, by the son of the registrar in the absence of his father; and in another case by Williams, the register of deeds, with whom the registrar had left the registration books. These registrations were irregularly made and might have been rejected and erased by the registrars. But it would not have been fair for them to have done this without notifying the parties, so registered, in time for them to have registered again. But instead of their doing this, they retained these names on their books, which they and the judges of election used on the day of election, thereby ratifying and approving these registrations. And

it would now be a fraud on the electors, as well as on the parties for whom they voted and also upon the State, to reject these votes for this irregularity. These votes cannot be rejected for this reason.

Another class of voters are a number of persons who lived on or near the dividing line between different townships, and voted in a different township from that in which they lived. The most of these votes were allowed by the learned and painstaking referee. But a number of those allowed by the referee were rejected by the court, and it is found and made a part of the judgment of the court that they so voted in bad faith. We say, it is found, and we say this advisedly, as it appeared from the argument before us and the Judge's notes, which were exhibited to us and commented upon, that the Judge found no facts, but simply noted that the exception was "sustained" or "overruled." And, it was contended, this was handed to counsel who prepared the judgment and findings therein, and sent them to the Judge who signed and returned them to the Clerk some time after the court adjourned. Permission was given him to make out his findings and to put them in writing, and to sign the judgment after court, and there is no complaint as to the time when these findings and judgment were filed. But the complaint is that they are not the findings of the court. But the learned counsel for the defendant argued that this was the practice in North Carolina; that the attorney of the successful party prepares the judgment of the court. And this is true. But the counsel for the plaintiff, while admitting this to be the practice, contends that this practice only obtains as to preparing the judgment upon facts found, and not as to the findings of fact. And this must be the correct rule of practice. But this is a matter we do not care to discuss further; for if, in fact, they were not originally found by the court, as the plain-

tiff contends, the court signed them and stands sponsor for what is found, and we will treat them as his findings.

The findings of the court, of bad faith, brings these liners within the rule laid down in *Boyer* v. *Teague*, 106 N. C., 576, and the court rejects their votes.

But as the plaintiff contends that this finding of bad faith on the part of these voters *is without any evidence* to support the finding (*Wittkowsky* v. *Wasson*, 71 N. C., 451) it becomes our duty to examine the evidence upon this finding of bad faith. And we find from the evidence that one or two of those voters stated that they knew at the time of the election that they did not live in the township in which they voted. But we find from the uncontradicted evidence that they all lived at or near the dividing line—some of the evidence tending to show that the line ran through the house of one of them, there was no definitely located line, and that they had all registered and voted before the election of 1894 in the same township in which they then voted, some of them for as long a time as 14 or 15 years; that they gave in and paid taxes in the townships in which they voted, and sent their children to school in these townships; and that they were qualified under Section 1, Article VI of the Constitution. Taking this undisputed testimony into consideration, in connection with that of one or two of them who stated that they knew they were outside by a few yards, does not, in our opinion, show any evidence of bad faith. Wittowsky v. Wasson, *supra*. They were entitled to vote somewhere. So there was no bad faith in voting. These votes would have counted just as much as they did, if they had been cast in the township where the defendant contends they should have been cast. The object of the law—a fair and full expression of the will of the qualified voters—must be kept in mind. And if this has been obtained and no fraud appears, this court will not

look for mere irregularities to defeat this will. *Railroad* v. *Commissioners*, 116 N. C., 563; *McDonald* v. *Morrow*, 119 N. C., 666; *Harkins v. Cathey*, 119 N. C., 649. All these parties, whose votes we have been considering, were registered voters—some of them, as we have seen, in an irregular manner, still they were registered, and *Southerland* v. *Goldsboro*, *supra*, cited and relied on by defendant, does not apply to them.

But what may be a good reason for not allowing a party to register is not always a good reason for rejecting his vote after it has been cast. There is some similarity between a vote cast and an objection to evidence, under Section 590 of *The Code*, where the answer does not suit the opposite side, but it is too late to object after the answer is made. *Meroney* v. *Avery*, 64 N. C., 312.

We have been discussing the right to register and the right to reject a vote when once cast, mostly on general principles. We now propose to show that the views we have expressed are sustained by authority.

A vote received and deposited by the judges of election is presumed to be a legal vote, although the voter may not have complied with the requirements of the registration law; and it then devolves upon the party contesting to show that it was an illegal vote, and this cannot be shown by showing that the registration law had not been complied with. Pain on Elections, Section 360. A party offering to vote without registration may be refused this right by the judges for not complying with the registration law. But, if the party is allowed to vote and his vote is received and deposited, the vote will not afterwards be held to be illegal, if he is otherwise qualified to vote. Pain, *supra*, Section 361. And where a voter has registered, but the registration books show that he had not complied with all the minutiæ of the registration law, his vote will not be

rejected.  Pain, *supra*, Section 361.  If a voter is registered in one township, he has no right to register and vote in another.  But if he is allowed to do so, his vote received and counted, and he is otherwise qualified, and votes at no other place, his vote should not be thrown out on that account.  Pain, *supra*, Section 366.  It is the right of parties to have the fairness of elections inquired into for the protection of honest electors.  But such legislation is not to be regarded as hostile to the right of a free exercise of the right of franchise, and should receive such construction by the courts as will be conducive to a full and fair expression of the will of the qualified voters.  Pain, *supra*

It follows from what we have said and the authorities cited, that *Harris* v. *Scarborough*, 110 N. C., 232, is overruled, and the more liberal construction placed upon the Statute in the dissenting opinion, is approved.

For the reasons heretofore given and the authorities cited, we are of the opinion that the vote of the liners, who voted in different townships from those in which they resided, being qualified voters and voting at no other place, should not have been rejected by the court.

The vote of E. R. Rudisel and the exception raise another ground of infirmity, that he had changed his residence to South Carolina and did not return to this State till within less than one year prior to the election.  It was shown and not disputed that he went to South Carolina, where he remained for more than a year, exercising his right of franchise, voting in a town election while there.  But it was contended by the defendant that he did not intend to change his citizenship; that he was a member of a military company in Cleveland county during all this time; that he returned to attend its musters and was elected a lieutenant during this time.  The referee, Burwell, held that he had changed his citizenship, and excluded his vote.  But the

court found that he had not changed his citizenship, and overruled the referee and restored this vote to the defendant. And as there is some evidence to sustain the finding of the court, this finding must stand.

We also sustain the vote of George Otterson. He went to the registrar within the time allowed, and the registrar administered the registration oath to him, and he left thinking he had been registered. But, through the neglect of the registrar, or for some other reason, his name did not appear on the registration books on the day of election. These facts being made to appear, he was allowed to vote and did vote. The court held that this vote was improperly received and excluded it. In this there was error. The judges might have refused to allow him to vote, and this would have presented another question. But they allowed him to vote, as they should have done, in our opinion. And his vote being in, and he being in all other respects a qualified elector, his vote should not have been excluded.

In our opinion, E. L. Jenkins should have been allowed to vote. He was born and raised in this State, afterwards moved to South Carolina, but returned to Cleveland county, in this State, one year and three days before the election. He offered to register the day the registration books were closed, but was not allowed to do so, as it lacked seven days of being one year since he returned to live in this State. This action of the registrar was proper. But on the day of election, when he had been a resident of this State for one year and three days, he asked to be registered, and with tickets in hand proposed to vote. But he was refused registration and his vote was also refused. He proposed to vote for the plaintiff, and being otherwise a qualified voter his vote should have been received and counted. *Code*, Section 2682; McCrary on Elections, Section 102.

This brings us to the consideration of No. 6 and No. 8 townships, and we prcpose to consider No. 6 first. The referee, Burwell, finds as facts that on the evening of the election, at the close of the polls at No. 6, the boxes were opened and the vote counted by the judges and such other electors as chose to attend; and at this counting it was found that the defendant, Lattimore, had received 548 votes, and this result was then and there so declared. The referee further finds that the defendant had not produced evidence sufficient to change the result of this count and declaration of the vote, and declares that the defendant's vote at No. 6 was 548.

But the judgment of the court finds that the vote was counted and declared, after the polls were closedon the evening of the election at No. 6, and at this count the defendant only received 548 votes, and this was offi-cially declared as the result. The court further finds that this count was not correct, and that defendant insists that this is a finding of fact, and there being some evidence to support it, it is binding on this court.

This is admitted to be the rule adopted by this court, that where there is evidence, both ways, the court will not review the findings of the court below, and we do not propose to invade this rule of practice, whatever our opinion may be as to the correctness of the finding. But the law makes this count and declaration of the result *prima facie* at least, the legal result of that election, until it is shown to be incorrect by proper and competent evidence. This, of course, might be shown by competent evidence, such as showing that a fraud had been committed upon the plaintiff in falsely declaring the vote. But no such evidence as this was introduced. The only evidence introduced to show that this count on the evening of the election was not correct was a tally sheet kept at the time of the count, turned over

to Tiddy and placed by him in an unlocked safe in the Register's office, where it remained all night. Next morning he took it out of the safe and put it in a pigeon hole over a desk in the same office, where it remained during that day. It appeared that this was a public office where all persons could go that had occasion to do so; that during this day it became known that the election between the plaintiff and defendant was very close, and that a few votes would change the result, which then appeared to be in favor of the plaintiff. It cannot be that such evidence as this, if it possessed no internal evidence of having been tampered with, could be allowed to rebut a legal presumption and change the result of an election This count, at the time of election, is held to be more reliable than any count, after there had been an opportunity for the vote to be tampered with. McCrary on Elections, Section 440. The Supreme Court of California refused to allow a recount upon its being shown that the ballots had not been kept in such a manner that they *could not* have been tampered with. McCrary, *supra*, Section 441. Where there has been an opportunity for the vote to be tampered with, it loses its character as primary evidence. McCrary, *supra.*

We, therefore, hold that the findings or declarations contained in the judgment of the court, that the referee committed an error in sustaining the original count, and that the defendant only received 548 votes at No. 6 township, is error, but that he received 553 votes is without evidence to support these findings; that the tally sheet relied on by' the defendant (and this being the only substantive evidence), having been exposed and liable to be tampered with, had lost its character as primary evidence, and could not be relied on to prove anything.

We therefore overrule the court, and sustain the ruling of Referee Burwell, and find that the defendant, Lattimore's vote at No. 6 precinct was 548 and not 553.

As we have passed upon this exception, overruling the court, holding that there was no competent primary evidence to sustain the finding, we will state that we have thoroughly examined this tally sheet, without and also under a heavy magnifying glass. And while, under the rules of this court, we did not consider ourselves at liberty to find facts upon which to base our judgment, it is manifest to us that this tally sheet has been tampered with. The figures are admitted to have been changed from 548 to 553. But this is not what we refer to. The right hand tally on the third row bears internal evidence of not being of the same make as the others. The cross stroke of every other tally is horizontal, or the right end is the highest, while in this tally the right hand end of the cross stroke is considerably lower than the other end. Also, the first two down strokes bear evidence of not having been made at one stroke of the pencil as would likely be the case in the hurry of tallying the vote, as it was counted. The second down stroke, especially, is forked at the lower end, as is quite apparent under a heavy glass. Without making any charge against any one, as this could not be done, the paper having been exposed in a public office for so long a time, and without any disposition to do so, if we could, we are of the opinion it has been tampered with.

The discussions and rulings we have made, being decisive of the question before us, no matter whether we should decide the controversy as to the vote in No. 8 one way or the other; and as any ruling we might make as to this contention would not affect the result, and as we have examined it sufficiently to know that its solution is not without trouble, we have not and will not consider this exception.

The investigation of the case results in finding that the plaintiff is entitled to have counted for him the following

votes that he was not allowed to have by the finding and ruling of the court, to-wit: John Surat, Lawson Kindrick, Henderson Sanders, John Jameson, James Crosby, Julius Crosby, Pinckney Crosby, R. C. Hoyle, W. P. Costner, R. C. Ledford, Caleb Ledford, David Pratt, Ed. Rankin, Reuben Posten, J. McRollins, John Porter, Batts McIntyre, William McLaney, S. A. McLaney, W. A. Pryer, Sylvanus Gordon, Sam Towrey, George Otterson, John Chapion, S. R. McMurray, E. L. Jenkins, Bish Hamrick, Daniel McSwain, Calhoun Russ, Ezzell Russ, George Price, Webb White, Floyd Havener, A. A. Hendrick, M. V. Turner, and G. R. Smith. And the plaintiff is also entitled to five votes in No. 6 township that he was not allowed by the judgment of the court—making in all, forty-one.

And we find that the defendant is entitled to have counted for him the following named voters that he was not allowed by the ruling and judgment of the court, to-wit: John Posten, Will Posten, F. P. Gold, Philip Martin and Randall Roberts—making five in all.

Thirty, the majority found for the defendant by the court, deducted from forty-one leaves eleven, and five which we find the defendant entitled to, that he was not allowed by the judgment of the court, deducted from eleven, leaves the plaintiff elected by six majority.

The judgment of the court, therefore, should have been that the plaintiff, Quinn, was duly elected to the office of Clerk of the Superior Court for the county of Cleveland, and is entitled to the same and the fees and emoluments thereof from the first Monday in December, 1894, and for the next four years then next ensuing. There is error, and judgment will be rendered according to this opinion.

Error.

DEFENDANT'S APPEAL.

FURCHES, J.: The exceptions in this appeal have been considered and passed upon in the plaintiff's appeal. But

as some of defendant's exceptions have been sustained, he should recover his costs of this appeal.