CLYDE McPHERSON AND C. B. MOORE v. THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; THE CITY OF BURLINGTON, N. C.; H. C. POLLARD, MAYOR AND MEMBER OF THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; A. A. ALSTON, MAYOR PRO TEM AND MEMBER OF THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; ALLEN B. CAMMACK, MEMBER OF THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; PAUL J. CRAIG, MEMBER OF THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; AND WILLIAM LELOUDIS, MEMBER OF THE CITY COUNCIL OF THE CITY OF BURLINGTON, N. C.; AND THE CITY OF BURLINGTON, N. C.

(Filed 25 February, 1959.)

**1. Pleadings § 17—**

A demurrer for failure of the complaint to state a cause of action is properly overruled when the demurrer does not point out any defect in the complaint which would entitle defendants to a dismissal of the action.

**2. Elections § 2—**

It is the duty of a registrar to administer the oath prescribed by law to electors before registering them, but his failure to perform his duty in this respect will not deprive the elector of his right to vote or render his vote void after it has been cast.

**3. Elections § 8—**

The certificate of the County Board of Elections is *prima facie* evi-

dence of the correctness of the count and stands unless rebutted by proper and competent evidence.

**4. Elections § 2—**

The fact that neither the registrar nor the person appointed for one day in his stead are residents of the area in which the annexation election is held, does not prevent them from being at least *de facto* registrars, and in the absence of any evidence that the result of the election was affected by such irregularities, it is insufficient ground to void the election or any votes cast by persons registered by them.

APPEAL by defendants from *Sink, Emergency Judge,* July Civil Term 1958 of ALAMANCE. This case as No. 740 was argued at the Fall Term 1958 of this Court.

This is an action to have an annexation election which carried by a majority of 24 votes declared invalid and void.

The complaint alleges numerous alleged irregularities in the annexation election held on 16 April 1957. The pertinent allegations of the complaint may be summarized as follows: (1) That the election was not conducted in the area to be annexed; (2) that all votes cast were invalid because a person not appointed judge acted in place of the judge officially appointed; (3) that four persons ineligible to vote voted and one person eligible to vote was unlawfully prevented from voting; (4) that all persons who voted, whether eligible or not, were not qualified to vote because they were not properly registered for the reason that: (a) some of them were registered by a registrar who was not a resident of the area to be annexed and therefore not a voter therein; (b) he was not appointed at an official meeting; (c). the rest of them were registered by a person who was not officially appointed registrar and who was not a resident of the area to be annexed and therefore not a voter therein. (5) Although not alleged in the complaint, the plaintiffs introduced evidence to the effect that some of the voters were not given any oath at the time of their registration, and the others took the oath without the use of a Bible.

There was no evidence introduced in support of the allegations summarized as (1), (2), and (3) above.

The evidence tends to show that on 28 February 1957 the County Board of Elections appointed Coley R. Mann registrar for the election to be held on 16 April 1957, which election was to determine whether or not the described area known as Grabur Heights should be annexed as a part of the City of Burlington, and that Leo Rice and C. H McPherson were appointed as judges of said election. The evidence discloses that Leo Rice declined to serve and that, upon recom-

mendation of Coley R. Mann, the Chairman of the County Board of Elections appointed John W. Hockaday to serve in his place.

The evidence further discloses that on the first day the books were open for registration for the election to be held on 16 April 1957, Coley R. Mann was acting as registrar of another election in the North Graham precinct; that the Chairman of the County Board of Elections appointed Mrs. Carlesley Mann Ivey, daughter of Coley R. Mann, to act as registrar on that day; that North Graham precinct constituted a major portion of the area to be annexed, and from that area 277 persons out of a total of 345 who registered for the election resided in the North Graham precinct, the other 68 residing in the area proposed to be annexed came from the South Graham and South Burlington precincts.

It is admitted that Mrs. Ivey did not administer the oath to those she registered. The evidence further tends to show that Coley R. Mann is the regular registrar in North Graham precinct and has been for many years; that he was sworn in as the registrar for the special annexation election held on 16 April 1957 and acted as such and that he administered the required oath to those he registered but did not use a Bible.

Coley R. Mann as registrar, and John W. Hockaday and C. H. McPherson as judges, certified in their official return, over their signatures, to the County Board of Elections, that 171 votes were cast in the election for the extension of the corporate limits of the City of Burlington, and 147 votes were cast against such extension. Likewise, the certificate of the County Board of Elections, showing its canvass of the results as set out in the certificate of the registrar and judges of said election, was also admitted in evidence.

The defendants' motion for nonsuit at the close of plaintiffs' evidence was denied. Motion was renewed at the close of all the evidence and again denied.

After all the evidence was in, the respective parties agreed that the case might be withdrawn from the jury and the following issue answered by the judge: "Was the election held on April 16, 1957, upon the question of whether the Grabur Heights area described in the complaint should be annexed to the City of Burlington, invalid as alleged in the complaint? Answer: Yes."

Based on the foregoing issue and the answer thereto, the court entered judgment to the effect that the election held on 16 April 1957 was null and void and that the defendants are restrained and enjoined from giving effect to said election.

The defendants appeal, assigning error.

*W. D. Madry, W. L. Shoffner, H. Clay Hemrick for defendant, appellants.*

*No counsel contra.*

DENNY, J.　The appellants' first assignment of error is to the failure of the court below to sustain their demurrer *ore tenus* on the ground that the complaint does not state a cause of action.

The demurrer interposed in the court below was properly overruled. It fails to point out any defect in the complaint which would entitle the defendants to a dismissal of the action. *Ledwell v. Proctor,* 221 N.C. 161, 19 S.E. 2d 234; McIntosh, North Carolina Practice and Procedure, 2nd Ed., Volume 1, Demurrer, section 1195, page 654. Cf. *Garner v. Newport,* 246 N.C. 449, 98 S.E. 2d 505.

The third assignment of error is directed to the failure of the court below to sustain their motion for judgment as of nonsuit at the close of all the evidence.

We note that the court below in denying the motion for judgment as of nonsuit, stated: "The court is of the opinion there is no qualification * * * where there is no oath administered * * * except the form prescribed by statute without the use of a Bible."

It is the duty of a registrar to administer the oath prescribed by law to electors before registering them, but his failure to perform his duty in this respect will not deprive the elector of his right to vote or render his vote void after it has been cast. *Quinn v. Lattimore,* 120 N.C. 426, 26 S.E. 638, 58 Am. St. Rep. 797; *Gibson v. Commissioners,* 163 N.C. 510, 79 S.E. 976; *Woodall v. Highway Commission,* 176 N.C. 377, 97 S.E. 226; *Davis v. Bd. of Education,* 186 N.C. 227, 119 S.E. 372; *Plott v. Commissioners,* 187 N.C. 125, 121 S.E. 190; *Glenn v. Culbreth,* 197 N.C. 675, 150 S.E. 332.

In *Gibson v. Commissioners, supra,* it is said: " * * * a statute prescribing the powers and duties of registration officers should not be so construed as to make the right to vote by registered voters depend upon a strict observance of the registrars of all the minute directions of the statute in preparing the voting list, and thus render the constitutional right of suffrage liable to be defeated, without the fault of the elector, by fraud, caprice, ignorance, or negligence of the registrars * * *. A constitutional or statutory provision that no one shall be entitled to register without first taking an oath to support the Constitution of the State and that of the United States is directed to registrars, and to them alone; and if they through inadvertence register a qualified voter, who is entitled to register and vote without admin-

istering the prescribed oath to him, he cannot be deprived of his right to vote through this negligence of the officers."

In the case of *Quinn v. Lattimore, supra,* the Court said: "It appears that a number of persons were registered by other persons than the regularly appointed registrars; in one instance, by the son of the registrar in the absence of his father; and in another case by Williams, the register of deeds, with whom the registrar had left the registration books. These registrations were irregularly made and might have been rejected and erased by the registrars. But it would not have been fair for them to have done this without notifying the parties, so registered, in time for them to have registered again. But instead of their doing this, they retained these names on their books, which they and the judges of election used on the day of election, thereby ratifying and approving these registrations. And it would now be a fraud on the electors, as well as on the parties for whom they voted and also upon the State, to reject these votes for this irregularity. These votes cannot be rejected for this reason. * * *

"A vote received and deposited by the judges of election is presumed to be a legal vote, although the voter may not have complied with the requirements of the registration law; and it then devolves upon the party contesting to show that it was an illegal vote, and this cannot be shown by showing that the registration law had not been complied with. Pain on Elections, sec. 360. A party offering to vote without registration may be refused this right by the judges for not complying with the registration law. But, if the party is allowed to vote and his vote is received and deposited, the vote will not afterwards be held to be illegal, if he is otherwise qualified to vote. * * * And where a voter has registered, but the registration books show that he had not complied with all the minutiae of the registration law, his vote will not be rejected. * * * If a voter is registered in one township, he has no right to register and vote in another. But if he is allowed to do so, his vote received and counted, and he is otherwise qualified, and votes at no other place, his vote should not be thrown out on that account. * * * It is the right of parties to have the fairness of elections inquired into for the protection of honest electors. But such legislation is not to be regarded as hostile to the right of a free exercise of the right of franchise, and should receive such construction by the courts as will be conducive to a full and fair expression of the will of the qualified voters. * * * "

Likewise, in the case of *Woodall v. Highway Commission, supra,* this Court quoted with approval from McCrary on Elections (3rd Ed.), section 216, page 143, the following: "In the courts of the coun-

try the ruling has been uniform, and the validity of the acts of officers of election, who are such *de facto* only, so far as they affect third persons and the public, is nowhere questioned. The doctrine that whole communities of electors may be disfranchised * * * because one or more of the judges of election have not been duly sworn, or were not duly chosen, or do not possess all the qualifications requisite for the office, finds no support in the decisions of our judicial tribunals."

In McQuillin, Municipal Corporations, 2nd Ed., Volume 3, section 12.10, page 76, *et seq.*, it is said: " * * * laws merely regulating the manner of conducting an election are usually regarded as directory, and hence a departure from the mode prescribed will not ordinarily vitiate the election. But whether or not the provisions are mandatory or directory, the rule usually applied is that mere informalities or irregularities in an election which do not affect the result will not invalidate it, for the courts prefer to give effect to the popular will whenever possible," citing *S. v. Nicholson*, 102 N.C. 465, 9 S.E. 545.

There is nothing in the evidence adduced in the trial below to support the view that any person voted in the election involved in this controversy who was not entitled to vote therein, or that any person was prevented from voting, by reason of any act complained of by these plaintiffs, who was entitled to vote.

No challenge on any ground was lodged against any of the 345 persons who registered for this election, either on challenge day or on the day of the election.

Moreover, when Coley R. Mann, who was acting as registrar, and John W. Hockaday and C. H. McPherson, who were acting as judges of the election, counted the ballots cast and declared the results thereof by certificate to the County Board of Elections, such declaration is *prima facie* evidence of the correctness of the count until rebutted by proper and competent evidence. *Quinn v. Lattimore, supra.*

Due to the conflict in the official duties of Coley R. Mann as the regular registrar of the North Graham precinct and as registrar of the area involved in the special annexation election, his daughter, Mrs. Ivey, was appointed registrar for one day by the Chairman of the County Board of Elections. G.S. 163-17. Neither Mrs. Ivey nor her father resided in the area in which the annexation election was held; nevertheless, it would seem that they were at least *de facto* registrars during the time they served as such, and in the absence of any evidence that the result of the election was affected thereby, their appointments will be deemed irregularities but insufficient to void the election. *Woodall v. Highway Commission, supra.*

We quote with approval what *Adams, J.,* speaking for this Court,

said with respect to irregularities in the holding of elections in the case of *Plott v. Commissioners, supra:* "While the alleged irregularities do not vitiate the election they fairly illustrate the spirit of indifference which characterizes the methods often adopted in the registration of voters. These lax methods, sometimes annoying, are always to be regretted and discouraged. We again refer to them for the purpose of emphasizing the importance of respecting the various statutes defining the qualification of voters, the prerequisites of registration, and the duty of registrars."

The foregoing admonition applies with equal force to county boards of election.

The judgment entered below is set aside and the ruling on motion for judgment as of nonsuit is

Reserved.