JOHN W. CASEY ET AL. v. DARE COUNTY ET AL.

(Filed 17 February, 1915.)

1. **Counties—School Districts—Bond Issues—Board of Education—Parties.**
In an action to restrain the issuance of bonds for local public school purposes and the levy of a special tax therefor, under an act authorizing the county commissioners to submit the proposition to the voters of the locality at the request of the county board of education, the latter board to issue the bonds and the former one to levy the special tax, the board of education is a necessary and indispensable party.

2. **Counties—School Districts—Bond Issues—Registration—Elections—Interpretation of Statutes.**
Where a statute authorizing the proposition to issue bonds to be submitted to the voters provides that the voters in the district "shall be required to register in accordance with the registration laws governing the election of the members of the General Assembly before being permitted to vote in said election," a new registration is not required; for the statute authorizes the use of the registration books used in the last general election of the members of the General Assembly.

3. **Bond Issues — Equity—Injunction—Elections—Registrar—Appeal and Error.**
In this action to restrain the issuance of bonds for local public school purposes the exception of the plaintiff that no registrar acted therein as required by law is not sustained by the evidence, and though the trial judge overruled the exception, but made no finding on the matters raised thereby, the exception is not sustained on appeal.

4. **Bond Issues — Registrar — Irregularities, Effect of—Equity—Injunction—Legal Majority.**
Where the plaintiffs seek to restrain to the hearing the issuance of bonds for local public school purposes, for irregularities of the registrar in permitting names to be stricken from the registration books by unauthorized persons, and in being temporarily absent, it is necessary for them to show, in order to obtain the injunctive relief, that these irregularities changed the result of the election, the question thus presented being whether the proposition had been carried by the requisite legal majority.

APPEAL by plaintiff from *Carter, J.*, at chambers, 10 December, 1914, from DARE.

Civil action, brought by the plaintiffs to restrain the issuing of certain bonds of the county of Dare by the defendants, the board of education and the board of commissioners of said county, and to restrain the levy and collection of a special tax to pay the interest on same.

A restraining order was issued by Carter, judge, presiding in the Superior Court of Dare County, and upon the hearing thereof. on 10 December, 1914, he continued the restraining order enjoining the collection of the special tax until final hearing, and dissolved the injunction prohibiting the issuing of the bonds. To so much of the order as dissolves the injunction as to the bonds the plaintiffs except and appeal.

*W. B. Bailey, Aydlett & Simpson for plaintiffs.*
*Ward & Thompson, B. G. Crisp, Ehringhaus & Small for defendants.*

BROWN, J. The first exception is to the order permitting the board of education of Dare County to come in and make itself a party defendant. The said board was not only a proper but a necessary party to this action, and it would have been error in the judge to have prevented their entry into the case. The act of 1913, Public-Local and Private Laws, chapter 120, provided: "That the county board of education of Dare County shall be authorized to issue bonds for the purpose of erecting a school building in District No. 17 of Dare County, and that the board of commissioners of said county shall levy a tax not to exceed 50 cents on each $100 worth of property and $1.50 on each taxable poll in said district, for the purpose of paying the said bonds at maturity."

The act further provides that "An election shall be held upon the request of the board of education, to be ordered by the commissioners of the said county, for the purpose of determining the amount of said bonds to be issued, the date of maturity of the same, and the rate of tax to be levied."

The act further provides that "At such election five freeholders living in the said district shall be named as trustees, and under the supervision of said trustees the school building herein provided for shall be erected, etc."

It is thus seen from the very language of the act that the board of education alone is authorized to issue the bonds, while the commissioners of the county are compellable to levy the tax. That being so, the board of education is an absolutely necessary party to this proceeding, the purpose of which is to enjoin the issuance of the bonds as well as the levy and collection of the tax.

There are several grounds set up in the complaint for the purpose of attacking the validity of the bonds. It is contended that under the act a new registration was necessary in order to give validity to the election. Section 3 of the act provides: "That all voters in said district shall be

required to register in accordance with the registration laws governing the election of members of the General Assembly before being permitted to vote in said election." This section does not require a new registration, but authorizes the election to be conducted in all respects as the election for members of the General Assembly. That being so, it was proper to use the registration books which had been used in the last general election instead of ordering a new registration.

The plaintiff alleges that this election was held on 28 July, 1914, and that there was no registrar, as provided in the said act; that those who voted in the said election, or a large majority thereof, were not duly registered; that many of the names on the registration books were placed there by others than the voters; that names were placed on the books when voters were not present; that the registrar did not register any qualified voters, as provided by the act; that the one who acted as registrar had no right to do so, and was not authorized according to law; that those who acted as judges of the election were not appointed by any one who had the right to do so; that at the pretended election the registrar and the judges of the election did not make the canvass of the votes and sign and make the returns as provided by law; that no board or persons in authority have canvassed the returns and declared the result of the election; that one of the judges of the election was a candidate for the office of trustee under the said act.

There are no findings of fact made by the judge, but several affidavits are set up in the record tending to support some of these charges, which are denied by the defendants, both in their answer and in the affidavits filed. The charge that no registrar was appointed, in accordance with the general election laws of the State, does not seem to be sustained. The evidence shows that the registrar in this case was not only *de facto,* but really *de jure. Norfleet v. Staton,* 73 N. C., 546; *Van Amringe v. Taylor,* 108 N. C., 196.

It is true that the registrar was absent from his duties some days when he should not have been absent, and that some names were put upon the registration books by an unauthorized person, and it is further in evidence that the registrar erroneously struck off a few names from the registration books because he had been informed that they would not be present on election day and vote. This, of course, was erroneous; but it does not necessarily invalidate the election, and before the plaintiff could enjoin permanently the issuance of the bonds, he would have to prove that these irregularities changed the result of the election. An irregularity in the conduct of an election which does not deprive a voter of his rights, or even admits a disqualified person to vote, but which casts no uncertainty on the result, will be overlooked when the only question is as to whether the proposition was carried by the requisite legal majority. *DeBerry v. Nicholson,* 102 N. C., 465.

We find in the allegations of the complaint, and in the affidavits filed in support of it, nothing to substantiate the claim that any legal voter was deprived of an opportunity to register and vote, or that a number of illegal votes sufficient to change the result was cast, and, failing such allegations, the result will not be disturbed. · *DeLoach v. Rogers,* 86 N. C., 358.

The most serious charge, and the only one we think that demands consideration, is that there was no canvass of the votes and no result declared, as required by law. If that is true, which is denied, then the right to use the bonds must necessarily fail. It is the duty of the county commissioners, who are charged with the supervision and control of the election in this case, to canvass the returns and to ascertain whether a majority of the qualified voters of the county voted in favor of the issue of the bonds.

In the election it was the privilege of the voters to determine under the peculiar words of this special statute the amount of said bonds to be issued, the date of maturity of the same, and the rate of tax to be levied, and as to whether or not the bonds shall be issued at all or not, and it must appear and it should be so recorded upon the records of the commissioners that a majority of the qualified voters of the county voted in favor of this proposition.

The validity of this election will not be determined upon mere suggestions in affidavits in injunction proceedings unless it clearly appears and is practically not denied that such irregularities entered into it as to · render it void.

We will not preclude the plaintiffs from showing, if they can, on the final hearing of this case, that the votes were not canvassed, that the result was not announced, and that no findings have been made by the commissioners that the bonds are authorized by a majority of the qualified voters. Those matters may be determined upon the final hearing of the case, and it would seem, in the absence of an injunction, that as long as that matter remains in doubt it would appear the part of wisdom for the board of education not to attempt to issue the bonds.

It is alleged in the answer that a large majority of the qualified voters of said district voted for the bonds, but whether the questions relating to the amount of bonds to be issued, the date of maturity, and the rate of tax to be levied were submitted at such election to the judgment of the voters does not appear in the answer or affidavits in this case.

The statute is a very peculiar one, and as we read it the question of issuing the bonds alone is not the only matter to be voted on, but the language of the statute says that the election shall be held for the purpose of determining the *"amount of said bonds, date of maturity, and rate of tax to be levied."*

Reversed.