O. F. DAVIS ET AL. v. COUNTY BOARD OF EDUCATION OF BEAUFORT COUNTY, BOARD OF COMMISSIONERS OF BEAUFORT COUNTY, SCHOOL COMMITTEE OF PUNGO DISTRICT, No. 1, W. A., RESPASS, W. J. HODGES AND N. W. PAUL.

(Filed 10 October, 1923.)

1. Constitutional Law — Municipal Corporations — Cities and Towns — Taxation.

Our Constitution, Art. VII, sec. 7, requiring the approval of the electors to a proposition of pledging its faith or loaning its credit by municipalities, applies to taxing school districts, and the validity of the tax or bonds requiring their sanction is determined by a majority of the registered voters.

2. Taxation—Statutes—Municipal Corporations—Cities and Towns—Absentee Voters—Irregularities—Discretionary Powers.

The absence of the registrar from the designated place of registration is an irregularity over which the electors have no control, and, such provisions being directory, it will not invalidate the result of the election when it appears that no elector was deprived of the right to register and vote, and each had full information of the place where he could register, and had been afforded reasonable opportunity to do so. A deviation in this respect is not encouraged by the court.

3. Same—Conditions Precedent—Mandatory Laws.

The amendment by Public Laws of 1919 of those of 1917, now C. S., sec. 5960, allowing electors within the voting district, without being present at the polls, to vote in the prescribed manner, is upon the condition precedent that with their ballots so to be cast, it shall be shown by a certificate of a physician or by affidavit that such persons were physically unable to attend, as it was intended as a matter of public policy, to prevent fraud in elections; and its compliance being within the power of such electors, the statute in this respect is mandatory; and where a sufficient number of them have so voted as to result in less than a majority of the registered voters for the special tax or bonded debt a school district proposes to issue, the certified result in favor of the proposition will be declared invalid.

Davis v. Board of Education.

**4. Same.**

C. S., sec. 5968, providing that election laws shall be liberally construed in favor of the elector's right to vote, has no application when he desires to avail himself of a special privilege and does not, of his own volition, comply with the conditions precedent prescribed by the statute, which gives him the right to do so. C. S., sec. 5960.

Appeal by plaintiff from *Connor, J.,* at May Term, 1923, of Beaufort.

Civil action. On petition, duly filed as provided in Public Laws, Extra Session 1920, ch. 87, the board of county commissioners ordered an election to be held on 19 December, 1922, at the Upper Pungo Schoolhouse, in Pungo School District, No. 1, on the two questions, whether a special tax of not more than 30 cents on the $100 valuation of property should be levied annually to supplement the school fund, and whether bonds not exceeding $20,000 should be issued for the purpose of erecting, enlarging, altering and equipping school buildings and acquiring the necessary land and an annual tax levied sufficient to pay the bonds as they matured. W. A. Respass was registrar and W. J. Hodges and N. W. Paul were judges of election. At the close of the polls the election officers counted the votes and made returns to the board of county commissioners. The board judicially passed upon the returns and found as a fact that there were 137. registered voters in the election and that 72 votes were cast for special tax and 71 for the bond issue. Whereupon the board adjudged that the election was duly carried in favor of the tax and the bonds.

The purpose of the action is to have the election declared void and to restrain the bond issue and the levy of the special tax.

The following verdict was returned:

"1. Were the five persons named in the complaint registered on 9 December, 1922, after sunset, as alleged in the complaint? Answer: 'No.'

"2. Were the five persons named in the complaint registered at the store of W. A. Respass and registered after the registration books had been closed? Answer: 'No.'

"3. Were the seven absentee voters' ballots unlawfully cast in favor of the bond issue and the special school tax, as alleged in the complaint? Answer: 'No.'"

Judgment was rendered dismissing the action, from which the plaintiffs appealed.

*J. D. Paul and Small, McLean &. Rodman for plaintiffs.*
*Stephen C. Bragaw and Lindsay C. Warren for defendants.*

ADAMS, J.  "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."  Const., Art. VII, sec. 7.  Since this section applies to a taxing school district and since "a majority of the qualified voters" means a majority of the registered voters, the judicial declaration of the board of commissioners that the election was carried in favor of levying the special tax and issuing the bonds can be sustained only in case a majority of the registered voters cast their ballots in support of the propositions submitted; and as the plaintiffs have attacked the result of the election as determined by the commissioners, it is made necessary to ascertain from the record whether a majority of the registered voters supported the proposed measures.  *Wood v. Oxford,* 97 N. C., 228; *Clark v. Statesville,* 139 N. C., 490; *Smith v. School Trustees,* 141 N. C., 150; *Williams v. Comrs.,* 176 N. C., 554; *Dickson v. Brewer,* 180 N. C., 403.

It is admitted that the number of registered voters was one hundred and thirty-seven.  The returns show that seventy-two votes were cast for the special tax and seventy-one for the bond issue.  But the plaintiffs contend that twelve votes, or seven at any rate, should be deducted from those counted as favorable to both propositions, and that if the deduction be made the election failed.  This contention demands consideration of the questions involved in the second and third issues.

In regard to the matters embraced in the second issue, the plaintiffs' exceptions are without merit.  His Honor fairly presented to the jury the question whether the names of the five persons referred to were registered after the books had been closed, and the controversy on this point was resolved against the plaintiffs.  The mere fact that their names were registered as a matter of convenience a half mile from the polling place did not vitiate the registration if it was otherwise valid. The registrar was not required to be always at the designated place of registration and there is no pretension that his temporary absence deprived any qualified voter of his right to register.  *DeBerry v. Nicholson,* 102 N. C., 465; *Younts v. Comrs.,* 151 N. C., 583.  The objection that he left the polling place and permitted these five persons to register at his store is met by the decision in *Newsome v. Earnheart,* 86 N. C., 395, in which *Chief Justice Smith* said: "The third exception is to the irregular manner of registration in that, while the notice to the voters desiring to register directed them to the residence of the registrar, the books were kept and the registering actually conducted at his store some three hundred yards distant.  This irregularity does not, in our opinion, vitiate the registration made and the election held in accordance with

DAVIS *v.* BOARD OF EDUCATION.

it. It appears that word was left at the house for every elector, who might there apply to have his name registered, to be advised of the change of place; and while it does not appear, nor is it suggested that a single elector who applied failed to be registered, it is in proof that the registration was full and the books were kept open on the day of election to enable all who had not been before then to have their names entered. Every substantial object of the law has been attained and a deviation from the directions of the law, in the course pursued, while by no means to be encouraged in those charged with its execution, ought not to be allowed to avoid the election and neutralize its results."

In reference to the questions included in the third issue, the plaintiffs alleged that the registrar cast seven votes of absentees who were then in the district in support of the special tax and the bond issue when the voters had not complied with the provisions of the statute; that the pretended right to cast the ballots was the alleged physical inability of the voters to attend the election for the purpose of voting in person; that all spectators were excluded from the polling place just before the return envelopes used by the absent electors were opened in order that a secret session might be held, and that as to these votes the right of challenge was done away with. It is upon these grounds that the appellants impeach the sufficiency of the seven votes so cast and insist that they be declared illegal and deducted from the number adjudged to have been cast for the tax and the bonds.

The question whether these votes were legal is presented by exception to his Honor's refusal to instruct the jury to answer the third issue "Yes" upon the admitted facts and by exception to the following charge: "The only question is whether or not the failure of the election officials to require a certificate from a physician or an affidavit that the person so offering to vote was physically unable to attend the election renders their ballots unlawful. I instruct you that if you find the facts to be that each of these seven persons whose ballots they accepted were physically unable to attend in person and vote at the election, that each placed the ballots in an envelope and sealed them and sent the envelopes down to the registrar, and that the registrar opened the envelopes and took therefrom the ballots and submitted them to the judges of election, and that the judges of election accepted the ballots and placed them in the ballot box, then I instruct you that notwithstanding the fact there was no physician's certificate or affidavit, that these ballots were lawfully cast, and therefore you will answer the third issue 'No.' If, however, you find that these persons were not physically unable to be present on that day, then you will answer the issue 'Yes.' "

The statutes providing how absent electors may vote were passed by the General Assembly of 1917 primarily to enable those engaged in the

military service to cast their votes by mailing them to the proper offi-
cials, and in 1919 they were amended so as to include voters physically
unable to attend the election and vote in person.  P. L. 1917, ch. 23;
P. L. 1919, ch. 322; *Jenkins v. Board of Elections,* 180 N. C., 169; *S. v.
Jackson,* 183 N. C., 695.  The following is the amended statute: "In all
primaries and elections of every kind hereafter held in this State any
elector who may be absent from the county in which he is entitled to
vote, or physically unable to attend for the purpose of voting in person,
which fact shall be made to appear by the certificate of a physician or
by affidavit, shall be allowed to register and vote as hereinafter pro-
vided."  C. S., sec. 5960.  As shown by reference to the acts of 1917
and 1919 heretofore cited, this section is applicable to two classes of
electors: (1) those who may be absent from the county in which they
are entitled to vote, and (2) those who are in the county but are physi-
cally unable to attend the election and vote in person.  The clause re-
lating to the affidavit and the physician's certificate is limited to the
latter class.

It is admitted that the seven impeached votes were cast in favor of
both the proposed measures and that the absent voters resided in the
school district, and did not show by affidavit or by the certificate of a
physician that they were unable to attend the election in order to vote
in person.  So the question raised by the exceptions is whether the pro-
vision of section 5960 relating to the affidavit and certificate is manda-
tory or directory.

While no universal rule may be laid down for determining whether
a statutory provision is imperative or directory beyond the fundamental
rule that it depends on the scope and object of the enactment, it is gen-
erally held that if a statute in granting a new power prescribes how it
shall be exercised it can lawfully be exercised in no other way.  Like-
wise the requirement is usually regarded as imperative where compli-
ance is made a condition precedent to the exercise of a special privilege.
Indeed, a statute which affects the public interest or the claims *de jure*
of third persons or promotes justice is construed with practical unanim-
ity to be more than directory; for, wherever public policy favors the
imperative meaning, the word "shall," according to the prevailing rules,
will be construed as mandatory.  2 Lewis' Sutherland on Stat. Con.
(2d Ed.), secs. 627, 629; Enlich on Interpretation of Statutes, sec. 431;
*Johnston v. Pate,* 95 N. C., 68; *Jones v. Comrs.,* 137 N. C., 580; *Battle
v. Rocky Mount,* 156 N. C., 329.

In several cases of contested elections in which these principles have
been applied the distinction is drawn between the duties imposed by
law upon the election officers and those imposed as conditions precedent
upon the absent voter.  The former are frequently regarded as direc-

tory; the latter are usually held to be mandatory. For example, in *Straughan v. Meyers,* 187 S. W. (Mo.), 1159, it appeared that the absent elector was required to present himself during voting hours and subscribe before one of the judges an affidavit relative to his residence and his qualifications as an elector together with the reasons of his absence, and that he had not voted and would not vote elsewhere. Construing the provision, *Revelle, J.,* said: "This being a special privilege conferred upon such person, and being available only under certain conditions, it seems to us that until these conditions are complied with the privilege cannot be exercised and that the voter has not performed his full duty until they have been met. Special privileges usually enjoin additional duties, and so it is with this act." There is a more comprehensive statement of the distinction in *Moyer v. Van de Vanter,* 29 L. R. A. (Wash.), 671: "There is good ground for recognizing a distinction between the obligations placed upon the individual voter and those matters which relate to the duties of election officers. Great care should be taken to distinguish between those requirements designed to prevent fraud, and which are necessary to the purity of elections, and those which, while designed for the same purpose, are not essential thereto, or we may overreach the salutary effect sought to be obtained from provisions of the character first mentioned, by going so far, in construing as valid and mandatory provisions of the second class, as to open the very door to fraud that was sought to be closed thereby. The individual voter may well be called upon to see that the requirements of the law applying to himself are complied with before casting his ballot; and if he should wilfully or carelessly violate the same, there would be no hardship or injustice in depriving him of his vote; but if, on the other hand, he should in good faith comply with the law, upon his part, it would be a great hardship were he deprived of his ballot through some fault or mistake of an election officer in failing to comply with a provision of the law over which the voter had no control. It is also a question in which the public has a direct and important interest; for the loss of such vote may have controlling effect upon a public matter. The constitutional provision aforesaid guarantees the right to vote, and this, of necessity, carries with it the right to have the vote counted. Of course, the manner of voting and canvassing votes must be subject to all reasonable legislative requirements. Many cases have been cited by counsel as supporting the positions taken by them, respectively, and many of these involve a consideration of various phases of the law commonly known as the 'Australian Ballot Law,' in force here, but which is a comparatively new thing in this country. These cases cannot all be harmonized, but the general trend thereof has been to recognize a clear distinction between those things required of the individual voter and those imposed upon election officers. There is a disposition to hold

the former valid and mandatory; but, where there has been a substantial compliance with the law on the part of the individual voter, and it is made to appear that there has been in fact an honest expression of the popular will, there is a well-defined tendency to sustain the same, though there may have been a failure to comply with some of the specific provisions of the law upon the part of the election officers, or some of them. Language may have been employed in some of the cases in conflict with this position; but, when such cases are examined, with reference to the specific facts decided, it will appear that this distinction has been adhered to, and it may truly be said to be the one great underlying principle of all the cases."

Our own decisions are of like import. The mere irregularity of an election officer who has neither rejected a qualified voter nor admitted one who was disqualified, is ordinarily overlooked as the failure to comply with a directory provision; but it is otherwise if the irregularity is caused by the agency of a party who seeks to obtain a benefit for himself. *DeBerry v. Nicholson, supra.* Instances of the disregard by an election officer of directory provisions which ordinarily will not deprive the elector of his right to vote are an improper method of administering an oath or failure to administer it, providing ballots slightly beyond the required size, certifying the count made not by but in the presence of the officers of election, and other irregularities not affecting the result of a fair expression of the popular will. *Newsome v. Earnheart, supra; DeBerry v. Nicholson, supra; Roberts v. Calvert,* 98 N. C., 581; *Hampton v. Waldrop,* 104 N. C., 453; *Quinn v. Lattimore,* 120 N. C., 426; *Hendersonville v. Jordan,* 150 N. C., 35; *Gibson v. Comrs.,* 163 N. C., 511; *Hill v. Skinner,* 169 N. C., 409.

But when the voter fails to perform the duties required of him as precedent to his right to vote, he generally does so at his peril. This doctrine has repeatedly been approved by the Court and seems now to be well established in this jurisdiction. "If the elector purposely refrains from qualifying himself by registration for the enjoyment of the privilege of voting, it is his own fault; and if he is prevented by physical disability from having his name entered on the registration books before the time prescribed by law, it is his misfortune. . . . It must appear that the voter did or offered to do all that the law required at his hands." *Harris v. Scarboro,* 110 N. C., 239. "A ballot cast by an elector in good faith should not be rejected for failure to comply with the law in matters over which the elector had no control, such as the exact size of the ticket, the precise quality of the paper, or the particular character of type or heading used, where the law has provisions to that effect; but if the elector wilfully neglects to comply with requirements over which he has control, such as seeing that his ballot when delivered is not so marked that it may be identified, the ballot

should be rejected. *Kerr v. Rhodes (Kirk v. Rhoads),* 46 Cal., 398," quoted with approval in *Wright v. Spires,* 152 N. C., 6.

It is needless to pursue the investigation. From these and other authorities we deduce the conclusion that the statutory provision that the physical inability of the voter to attend the election for the purpose of voting in person shall be made to appear by the certificate of a physician or by affidavit is mandatory, and that without at least a substantial compliance with the requirement the voter who is in the county cannot exercise the right which the statute is intended to confer. True, section 5968 provides that the election laws shall be liberally construed in favor of the elector's right to vote, and as we have said, they are liberally construed as to the duties of the election officers; but a different situation arises when the voter ignores the conditions on which his right to vote as an absentee is based.

We have given reflection to the argument that the judges of election acted upon personal knowledge of the illness of the seven absent voters; but we cannot approve the suggestion that such knowledge should be allowed to abrogate the imperative demand of the statute. The registrar and judges of election, when acting in their official capacity, are authorized to determine whether in matters of this kind the voter has complied with the law, but they are not clothed with power to nullify its plain mandate. If the doctrine insisted on were approved it would be necessary in all similar cases to refer to a jury the pertinent questions whether the absent voters were physically unable to attend the election and whether the judges of election had knowledge of their physical condition at the time the ballots were cast. This, of course, was not in the contemplation of the Legislature when the several statutes were enacted, and, as remarked by *Avery, J.,* in *Boyer v. Teague,* 106 N. C., 571, it would be obviously unwise to permit it after it is once ascertained what effect the votes would have upon the result of the election.

Upon careful examination of the record we conclude that the registration of the five voters at the registrar's store under the circumstances disclosed was an irregularity which did not vitiate the registration, and that the failure of the seven absent electors, who were in the county, to comply with the requirement of section 5960 was fatal to their right to vote. As the votes of the absentees were illegal, and without them a majority of the registered voters did not support the proposed measures, or either of them, we hold that there was error in the verdict and in the judgment dismissing the action. This conclusion is supported by the policy of the General Assembly as manifested in the recent amendment of the law relative to absent electors. P. L. 1923, ch. 111, sec. 5.