GREAT ATLANTIC AND PACIFIC TEA COMPANY v. GURNEY P. HOOD, COMMISSIONER OF BANKS, AS LIQUIDATING AGENT OF THE BANK OF BEAUFORT.

(Filed 1 November, 1933.)

1. Banks and Banking H e—Complaint held insufficient to state cause of action for preference in insolvent bank's assets.

Where in an action against the receiver of an insolvent bank to have plaintiff's claim declared a preference in the bank's assets, the complaint alleges that plaintiff purchased with cash the bank's check drawn on another bank, which check was not paid on account of the later insolvency of drawer bank, and the complaint does not allege that the check was a certified check or a cashier's check in the hands of a third person as a holder for value, or represented sums collected by the drawer bank and not paid: *Held,* defendant's demurrer is properly sustained, the complaint failing to allege facts sufficient to constitute the claim a preference either

under the provisions of N. C. Code, 218(c) (14), or under the trust fund theory, and the allegations of the complaint that the claim constituted a preference may be disregarded on demurrer as a conclusion of law.

**2. Pleadings D e——**

A demurrer admits allegations of fact in the complaint but not inferences or conclusions of law therein.

APPEAL by defendant from *Grady, J.,* at June Term, 1933, of CARTERET. Reversed.

The allegations of the complaint of plaintiff, are as follows:

"1. That the Great Atlantic and Pacific Tea Company was, at all times mentioned, and is now, a corporation created, organized and existing under the laws of the State of Arizona, and during all of said times and is now engaged in the mercantile business in the State of North Carolina and elsewhere, with a branch store in Beaufort, Carteret County, North Carolina.

2. That the Bank of Beaufort was created, organized and existing under the banking laws of the State of North Carolina, with principal office in Beaufort, Carteret County, North Carolina, and before its suspension was engaged in general banking business at Beaufort, N. C.

3. That said Bank of Beaufort, on account of insolvency, suspended business on 15 September, 1931, and was taken over for liquidation by Gurney P. Hood, Commissioner of Banks of the State of North Carolina, and in accordance with the provisions of the banking laws of said State, said Hood, together with H. H. Taylor, former liquidating agent, and his successor, W. A. Allen, were at the times mentioned herein, and are now, in charge of the liquidation of the assets of said bank.

4. That on Saturday, 12 September, 1931, the plaintiff (through its local manager) at Beaufort, North Carolina, purchased over the counter from the Bank of Beaufort a check on the Hanover Bank of New York in the sum of $330.00 and on Monday, 14 September, 1931, it purchased a similar check in the sum of $254.58, and that on each occasion the cash was paid to the Bank of Beaufort for said checks. That the Bank of Beaufort closed its doors on Tuesday, 15 September, 1931, and the two checks aforesaid on the Hanover Bank of New York were turned down by said bank.

5. That the plaintiff is advised and informed and believes and so avers, that the amount of $584.58, representing the amount paid in cash by plaintiff to the Bank of Beaufort for the two New York checks aforesaid is a preferred lien on the assets of the Bank of Beaufort in the hands of the defendant; that said amount is a trust fund and it would be fraudulent and inequitable to permit the assets of the Bank of Beaufort to be increased and augmented for the benefit of the general creditors at the expense of this plaintiff.

6. That this plaintiff, in due time, and in proper form, filed with the defendant its claim for $584.58, being the amount paid in cash for the two New York checks, as a preference and lien on the assets of the Bank of Beaufort, in the hands of the defendant; and the defendant, while admitting the correctness of the amount, did, on 12 December, 1932, deny said claim of the plaintiff as a preference and lien on the assets of the Bank of Beaufort.

Wherefore, plaintiff demands judgment against the defendant as follows: (a) That its claim of $584.58 be declared a preference and a lien on the assets of the Bank of Beaufort in the hands of the defendant. (b) That the defendant be directed to approve said claim as a preference and to pay the same. (c) For costs and general relief."

The defendant demurred on the following grounds:

"1. That said complaint does not state facts sufficient to constitute a cause of action for a preference and lien on the assets of the Bank of Beaufort in the hands of the defendant Commissioner of Banks of the State of North Carolina, in that: (a) It appears upon the face of the complaint that plaintiff's claim is not within the purview of the preference statute controlling, to wit: Consolidated Statutes (Code, 1931); section 218(c), subsec. (14); no fact or circumstance being alleged to invoke said statute and/or the construction thereof by the Supreme Court of North Carolina; (b) It appears upon the face of the complaint that item claimed in preference is not 'collection,' certified or cashier's check in hands of third party for value; (c) Upon the face of the complaint no trust is declared sufficient to raise the application of principle of 'trace' or 'augmentation' of assets, or to avoid the application of the statute cited. Wherefore, order appropriate is prayed."

The judgment of the court below was as follows: "This cause coming on to be heard upon the complaint and defendant's demurrer, and the court being of the opinion, upon the allegations of the complaint, that a good cause of action is stated, and that upon the facts as alleged, if true, the plaintiff would be entitled to a preference—it is therefore, ordered and adjudged that the demurrer be overruled, and defendants are allowed 20 days to file answer, if so advised."

Defendant excepted, assigned errors and appealed to the Supreme Court.

*T. C. Guthrie and Warren & Warren for plaintiff.*
*Julius F. Duncan for defendant.*

CLARKSON, J. The question involved is succinctly set forth in the 4th paragraph of the complaint, as follows: "That on Saturday, 12 September, 1931, the plaintiff (through its local manager) at Beaufort, North Carolina, purchased over the counter from the Bank of Beaufort

a check on the Hanover Bank of New York in the sum of $330.00 and on Monday, 14 September, 1931, it purchased a similar check in the sum of $254.58, and that on each occasion the cash was paid to the Bank of Beaufort for said checks. That the Bank of Beaufort closed its doors on Tuesday, 15 September, 1931, and the two checks aforesaid on the Hanover Bank of New York were turned down by said bank." In the distribution of the assets of the insolvent bank, is this a preference? We think not.

The statutory order of preference in distribution of the assets of an insolvent bank, is as follows: "The following shall be the order and preference in the distribution of the assets of any bank liquidation hereunder: (1) Taxes and fees due the Commissioner of Banks for examination or other services; (2) wages and salaries due officers and employees of the bank, for a period of not more than four months; (3) expenses of liquidation; (4) certified checks and cashier's checks in the hands of third party as a holder for value and amounts due on collections made and unremitted for or for which final actual payment has not been made by the bank; (5) amounts due creditors other than stockholders," etc. N. C. Code of 1931 (Michie), section 218(c), part subsec. (14).

It will be observed that the complaint does not allege that the check was a "certified check" or "cashier's check in the hands of third party as a holder for value" or "amounts due on collections," etc., as contemplated by the statute.

The transaction is that of debtor and creditor. If it were otherwise in every transaction involving the relationship of debtor and creditor, near to a bank's going into liquidation on account of insolvency, it would be claimed a preference—thus destroying the well recognized maxim that "equality is equity."

Citing a wealth of authorities (where there is no statute), the principle is thus stated in *Standard Oil Co. v. Veigel* (Minn.), 219 N. W., p. 863 (864): "It is well settled that the purchase of a bank draft, a cashier's check or a certified check creates the relation of debtor and creditor between the bank and the purchaser, and that the purchaser is not entitled to a preference over other general creditors of the bank from which it was purchased."

The matter is exhaustively discussed in *Harrison, receiver, v. Wright,* 100 Ind., 516, the headnote is as follows: "When properly filled out with the date, amount, the names of drawer and payee, the following is a banker's check: . . . 'Indianapolis, Ind., .... ............... .., 1883. No......... Pay to the order of............... ......., ....... .... dollars. .. ... .... ....... , cashier. To the United States National Bank, New York.' . . . Such a check, drawn upon the drawers' bank, without words of transfer,

and drawn upon no particular designated fund, does not, of itself, either as between the drawer and drawee, or drawer and payee or holder of the check, operate as an appropriation or equitable assignment of a fund in the hands of the drawee. Nor does it operate as an assignment of a part of the drawee's chose in action against the drawee; and hence the holder of such a check is not entitled to a preference as against the depositors and general creditors of an insolvent drawer." At pp. 543-544 it is said: "Some of the checks were purchased with cash by persons who were not depositors with the bank; others by depositors giving their checks. The court below held that the checks purchased with cash should, for that reason, be paid in full, and that the other checks should share pro rata with the other debts. We can see no substantial reason for such a preference. If the depositors had withdrawn the amount from the bank, and with this purchased the checks, it might well be said that they purchased them with cash. Whether the checks were paid for in cash or by the checks, the bank in each case received the amount of them. . . . There is nothing in the case to create a superior equity in favor of the check-holders as against the depositors and other creditors. No fraud is charged or shown whereby the payees were induced to part with their money for the checks. They were purchased in the usual course of business. The assets of the bank will not pay its debts in full. The depositors deposited their money, relying upon the credit of the bank, that the amounts would be repaid to them when called for. The payees purchased the checks, relying upon the credit of the bank, that the amounts paid for them would be refunded if, for any cause, the checks should not be paid by the drawees. It is a case where equality among the creditors is equity." *Williams v. Hood, Comr.,* 204 N. C., 140; *In re Bank of Pender,* 204 N. C., 143; *Board of Education v. Hood, Comr.,* 204 N. C., 353; *Bassett v. West Haven Bk. & Tr. Co.* (Conn.), 165 Atl., 895.

The allegations in section 5 of the complaint is a conclusion of law. The demurrer to the plaintiff's pleading admits plaintiff's allegations of fact, but not inference or conclusions of law. *Phifer v. Berry,* 202 N. C., 388.

There seems to be a conflict of law in the different jurisdictions on the question involved in this action, but we believe the majority opinion is in conformity with the view we take. For the reasons given, the judgment in the court below is

Reversed.