STATE OF NORTH CAROLINA ON RELATION OF CARL PHILLIPS v. R. B. SLAUGHTER.

(Filed 26 February, 1936.)

1. **Elections I a—**

    The result of an election will not be disturbed, nor one in possession of an office removed, unless the votes illegally counted or refused are sufficient to alter the result of the election.

2. **Pleadings D e—**

    A demurrer admits allegations of fact properly pleaded, but not conclusions of law.

3. **Statutes B a—**

    Statutes *in pari materia* must be construed with reference to each other.

4. **Elections F a—Absentee ballot law is applicable to municipal elections.**

    Construing N. C. Code, 5960, *et seq.*, known as the Absentee Ballot Law, with N. C. Code, 6055, *et seq.*, known as the Australian Ballot Law, *it is held* that the Absentee Ballot Law is applicable to municipal elections, and the machinery for its application in such elections is clearly provided.

APPEAL by the respondent from judgment overruling demurrer entered by *Warlick, J.,* at September Term, 1935, of GRAHAM. Reversed.

*T. M. Jenkins for relator, appellee.*
*R. L. Phillips for respondent, appellant.*

SCHENCK, J. This action was instituted by the relator, Carl Phillips, to have himself declared the duly elected mayor of the town of Robbinsville, and to remove the respondent, R. B. Slaughter, from said office. To the complaint of the relator the respondent filed a demurrer upon the ground that it failed to state facts sufficient to constitute a cause of action, in that it failed to allege that sufficient illegal votes had been cast for the respondent, or that sufficient legal votes for the relator had been refused, to alter the result of the election.

The relator alleges that in the municipal election held in and for the town of Robbinsville, on 7 May, 1935, he, the relator, "received 68 legal votes in said election and 81 votes were cast and counted for the defendant R. B. Slaughter, according to the official count."

The relator further alleges that in said election there were eight illegal votes cast for the respondent by nonresidents of Robbinsville, naming them, and that one legal vote tendered for the relator was illegally refused by the election officials. If these allegations be admitted, as they must be for the purposes of the demurrer, the count would stand 68 plus one, or 69, for the relator, and 81 minus 8, or 73, for the respondent, still leaving the respondent a majority of 4. The result will not be disturbed, nor one in possession of an office removed, because of illegal votes received or legal votes refused, unless the number be such that the correction would show a majority for the contesting party. *DeLoatch v. Rogers,* 86 N. C., 358; *Hendersonville v. Jordan,* 150 N. C., 35.

However, the relator further alleges "that of the eighty-one votes cast and counted for defendant in said election, . . . at least twenty votes included and counted therein were illegal, for that in said election twelve absentee votes were cast by absent voters who were out of said town on the election day," and that if these twelve absentee votes be also subtracted from the votes cast for the respondent there would be left (73 — 12) 61 votes for the respondent, which would make the vote 61 to 69, thereby giving the relator a majority of 8.

The demurrer admits the truth of the facts alleged, that is, that 12 absentee ballots were cast for the respondent, but it does not admit the conclusion of law set forth in the complaint, namely, that the 12 absentee ballots, because cast in a municipal election, were illegal. *Tea Co. v. Hood, Comr. of Banks,* 205 N. C., 313; *Phifer v. Berry,* 202 N. C., 388.

The demurrer presents this question of law: Is absentee voting permitted in municipal elections? If such absentee voting is so permitted, the demurrer should have been sustained, but if such absentee voting is not so permitted, the demurrer was properly overruled.

The absentee ballot law became a part of the general election law by chapter 23 of the Public Laws of 1917, and is now brought forward as article 9, chapter 97, North Carolina Code of 1935 (Michie), being sections 5960, *et seq.* The first sentence of section 5960 is as follows: "In all primaries and elections of every kind hereafter held in this State, any elector who may be absent from the county in which he is entitled to vote or who is physically unable to attend at the polling place for the purpose of voting in person shall be allowed to vote as hereinafter provided." Then follows the provision as to how an elector who "desires to vote by absentee ballot because of his absence" may do so.

Twelve years after the enactment of the absentee ballot law what is generally known as the Australian ballot law was enacted by chapter 164 of the Public Laws of 1929, and is brought forward in Michie's Code of 1935 as Article 18, chapter 97, sections 6055 (a-1), *et seq.* Section 6055 (a-1) repealed the principal election laws theretofore in effect and enacted new provisions in lieu thereof. Section 6055 (a-2) provides that: "The provisions of this subchapter shall be applicable to all counties, cities, towns, townships, and school districts in the State of North Carolina, without regard to population or number of inhabitants thereof." Section 6055 (a-3) provides for the preparation and distribution of ballots for national, State, county, municipal, and district offices in towns, counties, districts, cities, and other political divisions by the State Board of Elections, county board of elections, and by municipal authorities conducting such elections. Section 6055 (a-39) provides that "The ballots to be furnished absentee electors under the provision of section 5963 of the Consolidated Statutes of North Carolina and acts amendatory thereof shall be the same as the official ballots hereinbefore designated." It will be noted that section 5963 of the Consolidated Statutes is a part of Article 9, chapter 97, and provides for the furnishing by the chairman of the county board of elections or registrar of the precinct of ballots to absent voters. Section 6055 (a-42) is as follows: "With respect to all municipal primaries and elections, wherever in this subchapter appear the words 'county board of elections' shall be deemed to be written the words 'city or town governing body'; and wherever appear the words 'chairman of board of elections' shall be deemed to be written the words 'mayor of town or city.'"

Article 9 and Article 18 of chapter 97 (entitled "Elections") of the North Carolina Code of 1935 (Michie) being *pari materia,* must be construed with reference to each other, and when so construed it is manifest that the absentee ballot law is applicable to municipal elections and the machinery for its application in such elections is clearly provided.

Holding as we do that absentee voting is permitted in municipal elections, it follows that the 12 absentee ballots alleged to have been cast for the respondent were not illegal, and since they are not illegal, all other allegations in the complaint may be admitted and still the complaint will not state facts sufficient to state a cause of action against the respondent, since he would, under such allegations, still have a majority of four over the relator.

The judgment below is

Reversed.